PHELPS v. DRAINAGE DIST. NO. I OF
CHAMBERS COUNTY.

No. 12026.

Court of Civil Appeals of Texas. Galveston.
Dec. 23, 1948.

Rehearing Denied Jan. 13, 1949.

LeRoy McCall, of Beaumont, for appellant.

J. M. Combs and J. B. Morris, both of Beaumont, and Guy C. Jackson, Jr., and C. A. Pounds, Co. Atty., both of Anahuac, for appellee.

CODY, Justice.

This was an action by a tenant who had leased 120 acres of land which lay outside of (but adjacent to) the area included within the boundaries of appellee drainage district, to recover damages to his rice crop for the year 1946, alleged to have been caused by the acts of appellee drainage district in artificially concentrating and accelerating the rainfall "run-off" on 2200 acres of land within its district, and discharging same upon said 120 acre tract. At the conclusion of said appellant's (plaintiff's) evidence, the court directed a verdict for appellee, and rendered judgment that appellant take nothing.

Appellant filed this action in the district court of Jefferson County, and, as so orig-

inally filed, there were joined as defendants with appellee, the Sun Oil Company, Link Nolte, and Drainage District No. 3 of Jefferson County (within which said Jefferson County drainage district the said 120 acre tract is located). At the time of the trial, however, all of the defendants, other than appellee, had been dismissed from this action, and the cause had been transferred to the district court of Chambers County on the plea of privilege of appellee.—But it should be added that appellant had in the meanwhile brought independent suits against the other said defendants, seeking the recovery of the damages sought to be recovered from appellee in this action.

Briefly stated, it is appellant's contention that his evidence showed that appellee constructed a dragline ditch that diverted and accelerated the natural flow of surface waters from 2200 acres of land within its district, onto the 120 acre tract which appellant had leased. To aid in understanding the following detailed statement of facts, we have appended a rough sketch to this opinion which indicates the position of the 120 acre tract, as lying between the terminus of appellee's dragline, as constructed, and the ditch in Jefferson County, into which the "plow ditch" on the 120 acre tract discharged. More particularly stated, appellant's evidence was to the effect:

That he was a rice farmer, and rented 120 acres of land to farm to rice for the year 1946. That he paid the cash rental therefor of $540.00, about the first of January of that year. That he had long been familiar with said tract. That it was located in the extreme western part of Jefferson County, and its west line coincided with a portion of the west line of Jefferson County (which coincided with the east line of Chambers County at this point). That it was located within Drainage District No. 3 of Jefferson County (which district is not a party to this suit). That a "plow ditch" about six feet wide and eighteen inches deep had been put in by the Jefferson County drainage district years ago to drain said 120 acre tract. That said "plow ditch" began at the west end of said tract, and crossed it toward the east, and, at the east boundary line thereof joined a larger ditch

which extended to, and discharged into Mayhow Bayou. That, prior to the construction by appellee of its dragline ditch, said "plow ditch" had always been adequate to drain the 120 acre property, so that rice could be raised on said tract.

That in December, 1945, appellee drainage district began the construction or excavation of the aforesaid dragline ditch at a distance of about two miles west of the west line of the 120 acre tract, and it thereafter completed same up to the point where the plow ditch on the 120 acre tract began. That said dragline ditch was constructed to drain, and did drain about 2200 acres of land in appellee district. That at the point where appellee stopped the construction of said dragline ditch, it had a depth of four feet, and a top width of 17 feet, and a bottom width of 10 feet. That, in its course, the dragline ditch crossed four roads, with the barrow ditches, and also crossed "plow ditches". That its carrying capacity was about ten times that of the "plow ditch", which crossed the 120 acre tract. That the dragline ditch, as so constructed, caused the "plow ditch" across the 120 acre tract to operate as a bottleneck, as between the dragline ditch, and the ditch to the east of the 120 acre tract. That is to say, had appellee continued the dragline ditch across the 120 acre tract to the ditch on the other side of the 120 acre tract (being the ditch into which the "plow ditch" discharged) the dragline ditch would not have caused the 120 acre tract to flood. (The court excluded appellant's evidence to the effect that appellee drainage district did not apply for or obtain consent of the Jefferson County drainage district to join the dragline ditch to the drains of the Jefferson County drainage district.)

That appellant first learned of the construction or excavation of the dragline ditch in February, 1946, when he went with the owner to locate the lines of the 120 acre tract. The 120 acre tract had not been farmed for some years. It is customary not to farm rice land every year. As soon as appellant learned of the bottleneck which had thus been created, he wrote letters to oil companies and to appellee to learn who was responsible therefor, and to have the condition corrected. He bagan prepara-

tions for the 1946 rice crop. And·when he learned that appellee had excavated the dragline ditch, he notified it of the danger that his crop would be flooded, and requested it to correct the condition which it had created.

That 1946 was a wet year, and appellant's crop was greatly damaged. That he had to replant portions of the tract for the third time. That the year was not so wet but that appellant would have made a good crop except for the flooding caused by appellee's construction of the dragline ditch.

Appellee's defense, among other things, set up that the damage was caused by acts of God; that the damage was caused by a levee which appellant erected to protect his land from flooding; that the damage was caused by acts of other parties, with whom there was no unity of action or design on the part of the appellee in constructing its dragline ditch; that the damage was caused by failure of the Jefferson County drainage district to perform its statutory duty. Appellee further defended upon the ground that the conditions upon the ground were obvious, and the danger apparent, and that appellant was guilty of negligence in attempting to raise a crop of rice under the circumstances.

The acts which appellee contended contributed to the flooding, other than the levee erected by appellant, were (a) the acts of oil companies in constructing gravel roads across the 2200 acres so drained by the dragline ditch, which roads had barrow ditches which caused the run-off to drain into the dragline ditch more rapidly than would have been the case had the barrow ditches not been there, and (b) a road just east of the 120 acre tract which acted as a barrier to a considerable extent, to prevent the flooded condition of the 120 acre tract from correcting itself, and (c) the failure of the Jefferson County drainage district to put in drains that would take care of run-off cast on the 120 acre tract by appellee's dragline ditch.

Appellant predicates his appeal upon six points. The first three points, and its point number six are to the effect that the court erred in directing a verdict for appellee, because:

I. Appellant proved that appellee diverted the natural flow of the surface water so as to cause it to stand on appellant's rice farm for such a length of time as to damage his crop. ·

II. Appellant proved that appellee, by artificial drainage, caused more water to flow in a water course than the water course could carry, thereby damaging appellant's rice crop.

III. The appellant proved that he was damaged by the act of appellee in artificially draining water into the drains of Drainage District No. 3 of Jefferson County, without complying with the provisions of R. S. Article 8167.

VI. There was no evidence in the record to show that appellant's damage was caused by acts of others than appellee.

We think appellant's points 1 and 2, and point 6 must be sustained, unless the evidence conclusively established contributory negligence on the part of appellant in going ahead and attempting to make a rice crop with knowledge of the risk of flooding.

Appellee is the same sort of legal entity, with the same powers as the appellant in Jefferson County Drainage District No. 6 v. Langham, 124 Tex. 167, 76 S. W.2d 484, opinion adopted by the Supreme Court. It was held in that case, that a drainage district is liable by virtue of Section 17, Art. I of the State Constitution, Vernon's Ann.St., for damage resulting from the maintenance made by it under statutory authority. By virtue of Vernon's Ann.Civ.St. Art. 7589a it was liable for damages to lower land, caused by the surface waters which it diverted, concentrated and accelerated upon such lower land,—if a jury should so find the fact. See Miller v. Letzerich, 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451; Bunch v. Thomas, 121 Tex. 225, 49 S.W.2d 421.

It is well settled, of course, that, where the tort of each of several defendants is several when committed, such tort does not become joint because afterwards its consequences, united with the consequences of several other torts committed by other persons, result in producing dam-

ages.—Each tort-feasor is liable only for the part of the injury or damages caused by his own wrong. Sun Oil Co. v. Robicheaux, Tex.Com.App., 23 S.W.2d 713, 715. But that principle has no application here. The evidence here showed that the barrow ditches by the side of the roads, which were put in by various oil companies, were put in before appellee constructed its dragline ditch. Said barrow ditches did not divert or tend to divert the run-off onto the 120 acre tract. Their construction did not constitute any wrong against appellant, nor against the owner of the 120 acre tract. In other words, it was not the natural and probable consequence of construction of the barrow ditches that the waters therein would be diverted onto appellant's rice crop.

■ Also the evidence failed to show that the county road to the east of the 120 acres was not properly constructed to allow for any drainage from the 120 acre tract that could have been reasonably anticipated. And, if the construction of the county road was not a tort against the owner of the 120 acres when it was constructed by Jefferson County, we fail to see how the wrongful act of appellee in diverting run-off upon said tract could have converted the proper construction of said road into a tort. Before a defendant can be held liable for damages for committing a tort, it must first be shown that he committed a tort. The situation is not analogous to where several oil companies independently discharge pollution into a water stream to the damage of the rights of riparian owners. In such a case each act of pollution is a nuisance or tort. A riparian owner may not feel the effects of the pollution by a single company. But such a company has no right to pollute. However, anyone seeking to hold an offending company liable for injuries suffered from pollution, must show the extent of his injury caused by the various companies. It is upon such cases that appellee relies. We hold that there was no evidence that the county road was shown to be a proximate cause of the injury to appellant's rice crop.

■ So, we conclude that the evidence here made out a case which would have authorized a jury finding that appellee had caused whatever injuries the evidence showed that appellant suffered, subject, of course, to the question of whether appellant was guilty of contributory negligence in going ahead and preparing the land for a rice crop, putting in the crop, re-planting, etc., with knowledge of the risk of flooding, or in putting in the levee to seek to protect his land.

■■ Ordinarily, the question of whether a plaintiff has been guilty of contributory negligence is a question of fact for the jury, just as the question is one for the jury whether a defendant has been guilty of primary negligence. See A. J. Anderson & Co. v. Reich, Tex.Com.App., 260 S.W. 162, 163. The test is, what would a man of ordinary prudence have done under the same or similar circumstances? The jury could take into consideration every factor that the evidence raised. It does not appear to be contended that appellant was negligent in not finding out the situation sooner than he did. It does not appear what alternatives appellant had with respect to getting other rice land. In a word, merely because appellant recognized there was danger of flooding if the condition was not corrected does not necessarily convict him of contributory negligence. We see no reason not to allow the jury to determine the question of whether appellant was or was not contributorily negligent, under properly submitted special issues. In other words, we do not believe that the evidence established as a matter of law that appellant was guilty of contributory negligence.

Appellee asserts that appellant has not pled the correct measure of damages, and its answer contains exceptions directed thereagainst. But it does not appear that said exceptions were presented to, or acted upon by the court. In the state of the record, it appearing that appellant made out a case of substantial damages to go to the jury, we must hold that the court erred in instructing a verdict, and reverse the judgment of the trial court and remand the cause for a new trial.

The appellant filed a First Supplemental Petition in which he sought to set up, in

answer to appellee's plea of a superior right to drain the run-off into the drains of the Jefferson County drainage district, that appellee had no such right as it had not complied with R.S. Arts. 8167–8170. Appellant asserts, though the record does not show it, that the court ordered said pleading stricken. The record does show that appellant sought to make proof thereunder, but that the court would not admit such evidence.

Article 8167, just referred to, reads: "No individual, company, corporation or adjoining district shall have the right to artificially drain adjacent lands, located outside of an established district, into the canals, drains or ditches of such established district, without first making written application to and obtaining the permission of the district commissioners to make such connections. * * *" We fail to see why the quoted article does not apply here. But it may be that this article is for the protection of the Jefferson County drainage district. It is not necessary for us to determine the point in this case because, under the authorities cited, the appellee is liable for the injury caused to appellant, resulting from the diversion and concentration of the run-off from the 2200 acres upon the 120 acre tract.

In view of the fact that the cause must be remanded for a new trial, it is not necessary to consider appellant's points 4 and 5, based upon the court's asserted action in striking the said pleading, and in excluding evidence sought to be introduced thereunder.

For the error of the court in directing a verdict against appellant, the judgment is reversed, and the cause remanded for a new trial.